**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>  vs.<br><br>JUANITA HARRIS and **GERALD DREW**,<br><br>        Defendants. | 3:06-cr-00061-RRB-JDR<br><br>**RECOMMENDATION<br>REGARDING MOTION TO<br>SUPPRESS**<br><br>(Docket Nos. 33 & 37) |

Defendant **Gerald Drew** filed a motion to suppress evidence obtained from the search of his residence at 10270 Tartan Circle, Anchorage, Alaska, and of his 2001 Dodge Durango. The motion also seeks dismissal of the indictment as having been obtained by the derivative use of the (illegally) obtained evidence he

seeks to suppress. Docket No. 33.[1] The motion to suppress is **joined by** co-defendant **Juanita M. Harris**. Docket entry 37. The United States submitted an opposition to defendants' motion to suppress, Docket No. 40.

Defendants argue that the search warrant for 10270 Tartan Circle was not supported by probable cause to believe that evidence of a drug crime would be found there, or that Harris lived at that address. In its opposition to the motion to suppress, the government challenged the standing, in part, of the defendants to bring their motion. The government agreed that Harris, based on her sworn affidavit alleging that she was an overnight guest at the Tartan Circle residence, has standing to challenge the search warrant for that residence.

## Standing

On September 27, 2006, an evidentiary hearing was conducted on the issue of standing. A defendant bears the burden of demonstrating that he has a reasonable expectation of privacy in the place to be searched. <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 104 (1980). Harris filed her affidavit establishing that she was the registered owner of the Chevy Tahoe bearing license plate EJT 630. Docket entry 42. Gerald Drew testified at the evidentiary hearing that the residence on Tartan Circle was owned by his mother who had moved out of state. He had sometimes paid her rent and utility bills and kept his clothes there. At the time in

---

[1] A duplicate of the motion was also electronically submitted at docket entry 34.

question, he had no other residence in Anchorage. Based on Drew's testimony the government conceded that Drew has standing to seek suppression of the evidence obtained from a search of the residence.

Thus, both defendants have standing to seek suppression of the evidence from the residence. With respect to the Durango, Drew testified that the vehicle was in his mother's name, but that he sometimes paid $600 per month for use of the vehicle and had paid some of the insurance to drive it. Drew was driving the Durango the day of his arrest and had the keys to the vehicle in his pocket. Drew has thus shown standing to challenge the search of the Durango. Harris has not demonstrated her standing to challenge the search of that vehicle.

### Sufficiency of Search Warrants for Tartan Circle Residence and Dodge Durange

#### A. Dorr Affidavit

Anchorage police officers searched the residence of Drew at 10270 Tartan Circle and later the 2001 Dodge Durango pursuant to search warrants issued by an Alaska State court. Alaska search warrant 3-ANS-06-607 SW issued May 17, 2006, for the residence at 10270 Tartan Circle and was based on the affidavit of Anchorage Police Department (APD) detective G.K. Dorr.[2] Federal

---

[2] The affidavit of G.K. Dorr appears as exhibit A to the motion to suppress filed at docket entry 33.

Search Warrant 3:06-MJ-00159 was issued by a federal magistrate judge on July 31, 2006, for the 2001 Dodge Durango.[3] Defendants argue that the search warrant for the residence was not supported by probable cause, that it lacked particularity as to the location of suspected evidence, and lacked a showing of temporal specificity. They challenge the derivative use of that search warrant, both by the federal grand jury for the indictment in this case returned July 20, 2006, and for the federal search warrant for the Dodge Durango.

The affidavit of Detective Dorr in support of the 607 search warrant (Exhibit C to Docket No. 337) sets forth the officer's training and experience in narcotics investigations and recites by way of background that the investigation involves cocaine distribution by Juanita Michelle Harris. Detective Dorr provided the following facts and observations in his affidavit:

> Between May 3 and may 16, 2006, the drug enforcement unit of APD made three controlled cocaine buys from Harris using a cooperating source (CS) and recorded money. Observations during the investigation indicated that Harris was staying at the residence located at 10270 Tartan Circle. The affidavit sought a search warrant for

---

[3] A copy of the application and affidavit for this search warrant appears as exhibit D to docket entry 33.

the tartan Circle residence as well as Harris's vehicle, a 1999 Chevrolet Tahoe, EJT 630.

The CS was described as a long-term cocaine user who was cooperating with law enforcement in an effort to gain favorable consideration for CS's crimes. As a result of CS's prior cooperation, Detective Dorr had obtained evidence which he anticipated would support cocaine distribution charges against five people. The detective had found the CS to be reliable.

In mid-March 2006 APD conducted a controlled cocaine buy from a known suspect wherein Harris arrived and appeared to deliver cocaine to the suspect which was in turn delivered to the CS. The CS advised the police officers that the CS could buy cocaine directly from Harris. The CS identified Harris from a photo lineup.

On May 2, 2006, the CS advised Detective Dorr that Harris had called the night before and indicated that she would have cocaine available for CS on May 3, 2006. On that date the officers made a controlled half-ounce cocaine buy from Harris using the CS and recorded money. Harris

arrived at the pre-determined location for the drug transaction driving a Tahoe with license plate EJT 630. The CS was observed joining Harris and a small child in Harris's Tahoe. Harris produced the cocaine but the CS declined it because it was in powder form, and the CS had specified "hard."

Harris offered to obtain hard rock cocaine and return within fifteen minutes. The CS agreed to wait. Harris was surveilled by other officers to a residential address for a brief visit and then to a restaurant where she appeared to buy food. Harris left the restaurant and drove to the Fred Meyer at 2300 Abbott Road where she made contact with a male driver of a white Chrysler, tag EYF 669. The male driver of the Chrysler was later identified, but not disclosed in the affidavit. Harris returned to the parking area where the CS joined Harris in the Tahoe, and the sale of cocaine occurred in the Tahoe and was monitored and recorded by the officers.

That night Detective Dorr observed the white Chrysler EYF 669 parked in the driveway at 10270 Tartan

Circle. Harris's Tahoe EJT 630 was parked at the curb in front of the residence. That day, Detective Dorr also drove to Carrs at 1725 Abbott Road to buy groceries and recognized Harris in the store. He went outside to the parking lot and observed the white Chrysler EYF 669 parked and unoccupied. Harris eventually emerged from the store carrying a grocery bag and got into the Chrysler.

On May 6, 2006, the CS reported to the officer that Harris had approached him inquiring whether he needed any drugs, but he had declined. On that day, Detective Dorr drove to the Tartan Circle residence and observed the white Chrysler parked in the driveway. Parked at the curb was the Tahoe, EJT 630.

On May 9, 2006, the detective observed the Tahoe and the Dodge Durango parked at 10270 Tartan Circle. Preparations were made for a monitored transaction between the CS and Harris, but at the direction of the officer the CS cancelled the deal.

On May 11, 2006, the officer observed the silver Durango parked in the driveway of the Tartan Circle

residence.  A recorded call was made by the CS to Harris. The CS ordered cocaine, and a meeting was set at Popeye's restaurant on Boniface.  After a change of locations, Harris arrived at the designated parking lot driving the silver Tahoe.  She was again accompanied by a small child.  The CS joined Harris in her vehicle, and a drug deal was completed.

On May 13, 2006, the CS received a call from Harris. Detective Dorr observed the silver Tahoe, EJT 630 and a silver Durango, ETN 847, parked in the driveway of the Tartan residence at 11:30 p.m.  The following morning at 10:40 both of the vehicles were present in the driveway.

On May 15, 2006, the officer observed the silver Durango parked in the driveway of the residence, and Harris's Tahoe arrived and pulled into the drive behind the Durango.  At approximately 11:00 p.m. the officer observed the Durango parked in the driveway.  The following morning, the officer observed Harris's Tahoe in the same location as the previous night.  At 8:00 a.m. the CS advised that Harris had called that morning and

inquired as to whether CS needed anything and indicating that she had cocaine for sale.

On May 16, 2006, CS met Harris for a controlled buy. As Harris drove through a parking lot with CS as passenger, the officers monitored and recorded Harris telling the CS that she suspected several nearby vehicles to be undercover police. Harris chided CS for identifying the meeting location over the telephone. Harris provided the cocaine in a McDonald's happy meal box which was recovered by the officers. Later that night, Detective Dorr observed Harris's Tahoe parked at the curb of the Tartan Circle residence. The silver Durango was parked in the driveway. Harris's Tahoe was still parked there six hours later.

### B. Discussion

The State judge found probable cause to believe that a search of Harris's silver 1999 Chevrolet Tahoe, EJT 630 would yield items listed on attachment A to Dorr's affidavit, as well as probable cause to search the premises at 10270 Tartan Circle for the items in attachment A which included controlled substances and paraphernalia for packaging and distribution, paraphernalia for use

of cocaine, items related to illegal transactions in the laundering of drug proceeds, items showing ownership, possession or control of the residence and vehicle, firearms and proceeds of drug trafficking.[4]

The Dorr affidavit addresses the field testing of the suspected cocaine, as well as the procedure used to monitor the CS before and after the controlled buys were made. The search warrant for the 1002 Dodge Durango was supported by the affidavit of task force officer, Mikell Von Dolteren. Detective Dorr presented his affidavit to State of Alaska District Court Judge Alex Swiderski on May 17, 2006. This was the same day as his last observation and one day after the last cocaine purchase from Harris. The warrant was executed on May 18, 2006.

The defense argues that the affidavit provides insufficient facts to support probable cause that Harris resided at the Tartan Circle residence. They argue that the officers should have provided the issuing judge with the results of a review of Harris's driver's license, which would have reflected a different address. This argument misses the point. The officers were not taking action against the property, per se. It does not matter who claimed ownership of the property, rather it is a question of connecting the observed drug trafficking by Harris with the premises to be searched. The surveillance of the residence and vehicle driven by

---

[4] A copy of attachment A is filed as p.12 of exhibit C to the motion to suppress evidence, docket entry 33.

Harris clearly connected her to the Tartan Circle residence as a place she used during the day and a place likely to contain evidence of drug trafficking.

The affidavit relied upon to show probable cause for a search for the Durango was based in part upon the indictment in the instant case. The defendants have not shown that the government used suppressible evidence from the search authorized by warrant 3-ANS-06-607 to obtain the indictment or the search warrant authorizing the search of the Durango. The argument that the officers relied upon the fruit of an illegal search of the residence at 10270 Tartan Circle to obtain a search warrant for the Dodge Durango is without merit.

The officers obtained a state warrant 3-ANS-06-530-SW for using a wire to record drug dealing transactions of Harris on May 1, 2006, and a second warrant, 3-ANS-06-603 SW issued May 16, 2006 authorizing an additional fifteen days to wire/record and/or film the transactions with Harris.[5] Drew relies upon the fact that during the period from May 3 through May 17, 2006, no sale of cocaine had been arranged. The defendants argue that the probable cause showing is deficient because Dorr's affidavit does not explain whether the marked money was taken back to the Tartan Circle residence after any of the undercover sales. The defendants overlook the fact that not only was Harris's Tahoe seen a many times at

---

[5] A copy of the affidavits for these two warrants may be found at Exhibits A and B respectively, Docket No. 33.

the Tartan Circle residence, Harris appeared to carry cocaine with her before she got into her vehicle. Several of the drug deals occurred in her vehicle. As the Dorr affidavit explains, Harris probably prepared the cocaine for distribution before entering her vehicle. Based on his training and experience, Detective Dorr averred that "people involved in the use, possession, manufacture, and/or trafficking of controlled substances commonly engage in these activities at all hours of the day and night." Paragraph 9, p.3 of Exhibit C, Docket No. 33. Documents relating to the drug transactions are often kept in the residence of people involved in these activities, as well as the places where the activities occur. Dorr affidavit, ¶10, Exhibit C to Docket No. 33. The affidavit states that people involved in drug activities commonly possess money generated by the activities and commonly possess stolen property accepted in exchange for controlled substances.

   The state court accepted the detective's statements that the drug-related items listed in Attachment A are frequently kept at a residence and in a vehicle. A fair reading of the Dorr affidavit establishes probable cause to believe that Harris was selling cocaine. Harris was linked to the Tartan Circle residence through a vehicle. Her vehicle was observed at the Tartan Circle residence at times when she would have been preparing to deliver cocaine. Whether the Tartan Circle residence served as a stash house or her place of abode is not determinative. Nor is it significant to the probable cause determination that the affidavit did not show

3-06-cr-00061-RRB-JDR DREW @33 & 37 RR Re Motion to Suppress.wpd   12

RR @33 & 37 re MOTION TO SUPPRESS
3-06-cr-00061-RRB-JDR   Signed by Judge John D. Roberts   10/3/2006; Page 12 of 17

that Harris was selling cocaine directly from the residence, or whether Harris owned the car she was driving. The affiant did not need to describe where inside the residence the drug paraphernalia might be located.

The federal search warrant for the Dodge Durango relied in part upon the fact that Drew had a set of vehicle keys to the Durango on him at the time of his arrest. Officer Van Dolteren's affidavit sets out statements made by Drew after his arrest. The warrant to search the Durango was based upon a sufficient showing of probable cause and was not obtained by use of tainted evidence, as alleged by the defendants. Incident to Drew's arrest, investigators recovered a quantity of crack cocaine consistent with distribution. The vehicle was lawfully impounded upon Drew's arrest and driven back to the DEA property pending application for a search warrant. The APD officer who drove the vehicle to the DEA noticed a strong odor of smoked marijuana. An additional firearm was recovered in the vehicle.

An issuing magistrate must consider the totality of the circumstances supported by a finding of probable cause that the place to be searched contained evidence of a particular crime, here a violation of the drug trafficking laws. Illinois v. Gates, 462 U.S. 213, 239 (1983). The Ninth Circuit has given guidance on what is necessary to satisfy the probable cause standard. In United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985), *overruled on other grounds sub nom*, Gomez v. United States, 490 U.S. 858 (1989), the court stated:

> For probable cause to exist, a magistrate need not determine that the evidence sought is in fact on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit. United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985).

The magistrate may draw other inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense alleged. *See*, United States v. Garza, 980 F.2d 546, 551 (9th Cir. 1992). The issuing magistrate may rely upon conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found. United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990). It is common knowledge that narcotics traffickers frequently use fictitious names and take measures to evade law enforcement scrutiny. *See*, United States v. Marin-Buitrago, 734 F.2d 889 (2nd Cir. 1984). I agree with the government that simply finding out whose name is listed on the land records for the residence is not enough to determine who actually resides there at any given time. Detective Dorr's observations on several occasions connected Harris with the Tartan Circle residence. Twice these observations of Harris's vehicle occurred only hours after the drug transactions between the CS and Harris had taken place in Harris's vehicle. The surveillance and experience of Detective Dorr in drug investigations supports the conclusion that Harris would likely keep documents, firearms, and controlled substances at the Tartan Circle residence.

The defendants rely upon <u>United States v. Hove</u>, 848 F.2d 137, 139 (9th Cir. 1988) wherein the court stated that it was critical to the showing of probable cause "that the affidavit states facts sufficient to justify a conclusion that evidence of contraband will probably be found at the premises searched." To the contrary, Detective Dorr's affidavit sufficiently places Harris stay at or operating out of the Tartan Circle address. <u>Hove</u>, is inapposite. In <u>Hove</u>, the supporting affidavit offered no hint as to why the police wanted to search the residence, nor did the affidavit allege any link between the defendant and the location. 848 F.2d at 139-40.

In <u>Hove</u>, the defendant was suspected of mailing threatening communications. Officers executed a search warrant at a residence where it was believed the defendant was residing. The Ninth Circuit held that the warrant was lacking in probable cause. The court also observed that the supporting affidavit did not offer an explanation of why the police believed they may find incriminating evidence at the location of the search. For the foregoing reasons, the motion to suppress should be denied.

Citing <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984), the government argues that the officers had the right to rely upon the issuance of the search warrant even if the issuing magistrate had erred in finding probable cause. Since the search warrant for the Tartan Circle residence was fully supported by probable cause, there is no need to discuss the government's alternative argument under <u>Leon</u>.

Drew admitted after arrest that his vehicle contained firearms. The officers had the right to search Drew incident to his arrest. Because they found crack cocaine consistent with distribution, and based upon Drew's admission that the vehicle contained a firearm, the vehicle was lawfully impounded.

## Conclusion

Drew has standing to challenge the evidence derived from the search of the residence, as does Harris. Drew has standing to challenge the search of the Durango. However, none of the arguments made in support of the motion to suppress evidence are meritorious. The search warrant for 10270 Tartan Circle was supported by probable cause to believe that evidence of drug trafficking would likely be found at that residence. The search warrant for the Dodge Durango did not rely upon the fruit of an illegal search of the residence. Accordingly, the Motion to Suppress at Docket No. 33, joined by Harris at Docket No. 37, should be DENIED. IT IS SO RECOMMENDED.

DATED this 3rd day of October, 2006, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no

later than **NOON, Friday, October 13, 2006.** Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, Wednesday, October 18, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

      Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).